UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST LOOK INSTITUTE, INC. and SAM BIDDLE,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. MARINE CORPS,<br><br>Defendant. | Case No. 2:21-cv-05087-MCS-RAO<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 27, 28)** |

Defendant U.S. Marine Corps moved for summary judgment on all claims in Plaintiffs First Look Institute, Inc. and Sam Biddle's complaint. Def. MSJ, ECF No. 27. Plaintiffs opposed the motion and cross-moved for summary judgment. Pls.' MSJ, ECF No. 28. Defendant replied in support of its motion and opposed Plaintiffs' motion. Def. Opp'n, ECF No. 29. Plaintiffs replied in support of their motion and opposed Defendant's motion. Pls.' Opp'n, ECF No. 31. The Court heard argument on March 28, 2022. Mins., ECF No. 35.

I.  **BACKGROUND**

Plaintiffs brought this Freedom of Information Act ("FOIA") lawsuit to compel Defendant to produce agency records that would reveal information about Lattice, an artificial intelligence defense system deployed at multiple U.S. Marine Corps bases and

1

along the U.S.–Mexico border. Compl. ¶¶ 1–2, ECF No. 2. Anduril, a defense start-up, developed the Lattice system. *Id.* ¶ 17. Plaintiffs submitted a FOIA request to Defendant seeking "any and all training documents, including instructional videos and presentations, pertaining to the use and maintenance of the Lattice Platform Sentry Towers installed at Marine Corps Base Hawaii." *Id.* ¶ 18. Defendant identified a 19-page user guide as the only responsive document. *Id.* ¶ 19. Defendant withheld the user-guide under FOIA exemption 4. *Id.* Anduril influenced the decision by Defendant to withhold this user guide because Anduril asserted the user guide contained proprietary information. *Id.* ¶ 21. Plaintiffs appealed the denial, and Defendant rejected Plaintiffs' appeal. *Id.* ¶¶ 22–23. Plaintiffs allege that Defendant "violated FOIA . . . by failing to disclose all responsive records in its possession at the time of the Request without a lawful reason for doing so" by relying on "a plainly inapplicable exemption." *Id.* ¶ 26.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving

party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id*. at 587.

## III. DISCUSSION

Plaintiffs move for summary judgment on two grounds—that Defendant improperly withheld the user guide and that Defendant failed to conduct an adequate review for responsive records. *See generally* Pls.' MSJ. Plaintiffs did not include any allegations about inadequate review in their complaint and did not mention this as a ground for relief in their Rule 26(f) report. *See* Compl.; Rule 26(f) Report, ECF No. 22. Instead, Plaintiffs raise this ground for relief for the first time in their cross-motion for summary judgment. This is improper, so the Court does not consider or resolve Plaintiffs' claims about the adequacy of Defendant's review. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (holding a district court properly declined to allow a plaintiff to adjudicate new factual issues outside the scope of the complaint at summary judgment).

Any agency withholding the production of records under FOIA has the burden to justify that it properly withheld the records. *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012). In 2016, Congress passed the FOIA Improvement Act to clarify that "[a]n agency shall . . . withhold information under this section only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or . . . disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). The relevant subsection (b) exemption here is exemption 4, which states that an agency need not disclose "trade secrets and commercial or financial information obtained from a person and privileged or confidential." *Id.* § 552(b)(4). The Supreme Court addressed exemption 4 in *Food Marketing Institute v. Argus Leader Media*, rejecting a D.C. Circuit rule requiring that an agency demonstrate that there

would be substantial competitive harm to justify withholding production under exemption 4. 139 S. Ct. 2356, 2366 (2019). The Supreme Court did so on the basis that the substantial competitive harm rule has no basis in FOIA's text. *Id. Argus Leader* did not address the FOIA Improvement Act, however, because the Act only applied to FOIA requests made after its enactment. *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019).

District courts addressing the interaction between *Argus Leader* and the reasonably foreseeable harm language in § 552(a)(8)(A)(i) have adopted two standards. One group of courts have adopted the substantial competitive harm test the Supreme Court rejected in *Argus Leader*. *See, e.g.*, *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019). Another group of courts have adopted a requirement that the agency explain how the disclosure of a specific document would harm the interest protected by the exemption. *See, e.g.*, *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018). The Court declines to choose one approach over the other because under either approach, Defendant properly justified its invocation of exemption 4.

To show a document is protected under exemption 4, the agency must show a record is: "(1) commercial or financial information, (2) obtained from a person or by the government, (3) that is privileged and confidential." *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994), *overruled on other grounds by Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 990 (9th Cir. 2016). The agency must also demonstrate reasonably foreseeable harm from the disclosure of a record. 5 U.S.C. § 552(a)(8)(A)(i)(I). Courts determine whether a record is commercial according to the ordinary and common meaning of the term commercial. *Carlson v. USPS*, 504 F.3d 1123, 1128 (9th Cir. 2007) (interpreting a similar U.S. Postal Service regulation); *Public Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (interpreting FOIA). A person from whom a record was obtained includes a corporation. 5 U.S.C. § 551(2). Finally, a record is privileged and confidential where it is both customarily

and actually treated as private by its owner and is provided to the government under an assurance of privacy. *Argus Leader*, 139 S. Ct. at 2366. The parties agreed at the hearing that the Court may examine the course of conduct of an agency and a corporation to determine whether the owner actually and customarily treats the record as privileged and confidential. The Supreme Court has not decided whether governmental assurances of privacy are a necessary or sufficient condition for confidential treatment. *See id.* at 2363.

Defendant has demonstrated each element of this test. First, the user guide is a commercial document. This guide is a nonpublic technical guide that contains both trade secrets and nonpublic commercial information. Masaki Decl. Ex. 3, ECF No. 27-4. Plaintiffs argue that this information is not financial information, Pls.' MSJ 9–11, but Plaintiffs fail to contend with the fact the document likely contains trade secrets. Section 552(b)(4) explicitly protects trade secrets. Plaintiffs' own cited case, *New York Times Co. v. FDA*, 529 F. Supp. 3d 260 (S.D.N.Y. 2021), concludes as much. The *New York Times* court stated that an interaction between a private company and the government becomes commercial if it reveals information "about the company's internal operations or income-producing activities." *Id.* at 277. The *New York Times* court concluded that a complaint submitted by a customer to a company does not fall under this exemption. *Id.* This does not change that a user guide detailing the operations of Anduril's proprietary technology is likely a protectible trade secret. Defendant thus demonstrates the first element. Second, the parties do not dispute that Anduril is a person under § 551(2).

Third, the user guide is privileged and confidential. Anduril and Defendant have both customarily and actually treated this information as confidential. Anduril employs strict operational security standards to protect its information from outside persons. Johnson Decl. ¶ 13, ECF No. 27-9; *see also* Pls.' Statement of Genuine Issues of Material Fact ("GDMF") ¶ 33, ECF No. 28-7. Defendant only grants access of the user

guide to employees on a need-to-know basis. Johnson Decl. ¶ 16; Pls.' GDMF ¶ 34.[1] The Marine Corps Contracting Officer's Representative must approve the dissemination of any account-specific information beyond the group of employees with need-to-know access. Johnson Decl. ¶ 17; Pls.' GDMF ¶ 35. During training sessions, Anduril trainers stated the user guide was proprietary information. Johnson Decl. ¶ 27; Pls.' GDMF ¶ 47. Anduril represents that it understood from its training that Defendant would treat this information as confidential. Johnson Decl. ¶ 25; Pls.' GDMF ¶ 48. These undisputed facts all establish that Anduril and Defendant actually and customarily treated this information as confidential with assurances of privacy from the government.

Plaintiffs argue that three facts unique to Anduril's contract and technology vitiate the actual and customary treatment of the user guide as confidential. First, Plaintiffs point to contract language that permits Defendant to disclose technical information without restriction. Pls.' MSJ 11–15. The contract between Anduril and Defendant incorporates 48 C.F.R. § 252.277-7015. Pls.' GDMF ¶¶ 36–37. This regulation provides that the government can disclose technical information provided to it without restrictions on use, modification, release, or further disclosure other than release or disclosure resulting from business entity changes. 48 C.F.R. § 252.277-7015(b)(1). This regulation also states that except as provided in subsection (b)(1), the government shall not release technical data without the contractor's permission. *Id.* § 252.277-7015(b)(2). Plaintiffs argue this regulation means that the user guide was not

---

[1] Plaintiffs dispute that Anduril provides the user guide to only those people that "'read-on' to the Marines account." Pls.' GDMF ¶ 34. Plaintiffs cite a redacted version of the Marine Corps Installation Command contract, Forjohn Decl. Ex. 1, ECF No. 27-6, and the redacted user guide, *id.* Ex. 3, ECF No. 27-8, in support of this dispute. Neither document creates more than a "metaphysical doubt" that Anduril provided this document to users other than those that "read-on" to the Marine Corps account. *Matsushita*, 475 U.S. at 586. Thus, Plaintiffs have not established a genuine dispute of material fact as to this issue.

confidential because Defendant could disclose this information at any time. Even assuming Plaintiffs' interpretation of this regulation is correct, Plaintiffs agreed at the hearing that under *Argus Leader* the Court must examine the actual course of conduct rather than any possible hypothetical conduct to determine whether a document was kept privileged and confidential. Because all evidence in the record demonstrates that Defendant and Anduril actually and customarily kept this information confidential and privileged, the presence of this regulation does not alter the Court's conclusion that Defendant properly justified withholding the user guide under exemption 4.

Second, Plaintiffs point to the fact that Anduril did not claim its employees with access to the user guides had to sign nondisclosure agreements. Pls.' MSJ 15. The absence of nondisclosure agreements is a factor that supports concluding that a company or the government did not treat a record as privileged or confidential. *Animal Legal Def. Fund v. FDA*, No. 12-cv-04376-KAW, 2021 U.S. Dist. LEXIS 142866, at *17–18 (N.D. Cal. July 30, 2021). The record as a whole is absent of any indication that the company or the government treated the user guide as anything other than privileged and confidential, though. This is a substantially different situation than the one the *Animal Legal Defense Fund* court faced, where the district court identified the lack of nondisclosure agreements as one of many facts indicating that the company affirmatively did not treat the records the FDA sought to withhold as privileged or confidential. *Id.* at *14–24. The absence of any evidence that Anduril required its employees to sign nondisclosure agreements thus does not change the Court's conclusion that Anduril and Defendant actually and customarily treated the user guide as confidential and privileged.

Finally, Plaintiffs argue that the existence of three patents covering the Lattice system vitiates the confidentiality of this information. Pls.' MSJ 15–16; *see also* Noble Decl. Exs. 2–4, ECF Nos. 28-3 to -5 (U.S. Patent Nos. 11,182,043 B2, 10,506,436 B1, and 10,812,978 B2). These patents only provide general descriptions of algorithms for how to incorporate a system of secure communications from many different sensors and

analyze the inputs. What the patents do not describe is how the underlying system actually works: what sensors are used, how the sensors are configured, the exact technological mechanisms of the sensors, the machine learning algorithms used, and how the end user operates the system. These patents do not disclose any information that Anduril claims is in the user guide. *See* Johnson Decl. ¶¶ 32–36. Thus, their existence does not vitiate the actual and customary treatment of the user guide as confidential and privileged by Anduril and Defendant. Defendant has established all three elements of the exemption 4 test laid out in *GC Micro Corp.*

Defendant also establishes that it complied with the FOIA Improvement Act under either the substantial competitive harm or the specific explanation of harm test. Defendant has provided a declaration from Anduril that discloses the competitive harm Anduril would face should this information be disclosed. Johnson Decl. ¶¶ 32–36 Specifically, disclosure of this user guide would undermine the confidentiality of Anduril's trade secrets and place it at a high risk of competitive harm with entities like Lockheed Martin, Boeing, Raytheon, BAE Systems, and Northrop Grumman, all giants in the defense contracting space. *Id.* ¶ 34. Anduril would lose its competitive advantage from the ease of use of its systems, which the user training guide details by showing users how to use Anduril's Lattice system. *Id.* ¶ 35. Disclosure of the user interface would allow other companies to copy the Lattice capabilities and erode Anduril's competitive advantage. *Id.* ¶ 36. This unrebutted evidence demonstrates there would be substantial competitive harm and provides a specific explanation of the harm to confidentiality interests that would result from disclosure of the user guide.

Thus, the Court concludes that Defendant properly justified its invocation of exemption 4. The Court grants summary judgment to Defendant on the sole claim in Plaintiffs' complaint. The Court denies Plaintiffs' cross-motion for summary judgment on the same basis.

///

## IV.  CONCLUSION

The Court **GRANTS** Defendant's motion, ECF No. 27, and **DENIES** Plaintiffs' motion, ECF No. 28. The Court directs the Clerk to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: June 13, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE